UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MICHAEL LING, ET AL.,                        :
                                             :
        Plaintiffs,                          :
                                             :
- against -                                  :        04 CV 4566 (HB)
                                             :
DEUTSCHE BANK, AG, ET AL.,                   :        **OPINION & ORDER**
                                             :
        Defendants.                          :
                                             :
------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

    This civil action has been brought before this Court on several Defendants' motions to dismiss Plaintiffs' Second Amended Class Action Complaint ("Complaint"). For the reasons set forth below, Plaintiffs' Complaint is dismissed without prejudice and with leave to file a Third Amended Complaint.

    I.    **BACKGROUND**

    Plaintiffs brought this case against Defendants alleging that the Plaintiffs were defrauded through the marketing and sale of tax advice. The facts below are drawn from the allegations in the Second Amended Class Complaint and are presumed to be true for purposes of this motion to dismiss.

    The tax strategy at the source of this lawsuit involved the purchase and sale of options of foreign currency where the option positions were transferred into a limited liability company (LLC), which is treated like a partnership for tax purposes. As a result, the taxpayer would claim that the basis of the taxpayer's partnership interest was increased by the cost of the purchased options, but was not reduced by the taxpayer's obligation with regard to the options written. These transactions were referred to as Market-Linked Deposits ("MLDs") or FX Contracts. The Internal Revenue Service ("IRS") published Notice 2000-44 on August 11, 2000 entitled "Tax Avoidance Using Artificially High

1

Basis." This notice made clear that any tax strategy that created an artificially high basis, with no economic substance or business purpose other than to avoid taxes, was illegal. Generally, Plaintiffs contend that the Defendants knew or should have known that as a result of this Notice, that the tax strategy engaged here would also be verboten.

The MLD tax strategy is alleged to be a variation on the strategy denounced in the IRS Notice 2000-44. Plaintiffs initiated this strategy in the summer of 2001. The transaction worked as follows: First the individual Plaintiffs would each open accounts with Deutsche Bank and deposit an amount of cash for the purpose of purchasing long and short MLD positions. The LLC included the Individual Plaintiffs and another entity created solely for the MLD transaction (made up of the Clarion Defendants).[1] The Defendant banks formed an LLC on behalf of the individual Plaintiffs and an S Corporation to complete the transaction. LLCs and S Corporations are treated like partnerships for tax purposes and income is taxed at the shareholder level rather than at the corporate level. Only corporations with a limited number of shareholders can elect S Corporation status under Subchapter S of the Internal Revenue Code.

Second, the individual Plaintiffs would each enter into MLD or FX Contract with Deutsche Bank or Societe Generale to purchase and sell a long and a short MLD position in almost identical amounts with different (but narrow) strike prices, each to expire in 60-90 days. The long MLD included an identical deposit to the deposit included in the short MLD position. The cost of the long MLD position was largely, if not entirely, offset by the amount received by the individual Plaintiffs for the short MLD position. Both long and short positions would be contributed to the LLC formed for the purpose of creating the basis necessary for the transaction to have the desired capital loss. The individual Plaintiffs' basis would be increased by the amount paid for the long MLD position but it would not be decreased by the short MLD position. The expectation was that these options would expire "out of the money" thus creating a capital loss which could then be setoff against capital gains on the participants' tax return as spelled out below. The tax strategy worked so that

---

[1] The Clarion Defendants include Clarion Global Derivatives LXXXV, LLC, Clarion Global Derivatives XXXV, LLC, Clarion Global Derivatives V, LLC, Clarion Capital, LLC, Clarion Capital Corporation, Clarion Capital Holdings, LLC, Clarion Capital Partners, LLC, Clarion Forex Advisors, XXXV, LLC, Daniel Brooks, Jr., Clarion Global Derivatives XV, LLC, Clarion Global Advisors X, LLC, Clarion Global Advisors V, LLC.

the individual Plaintiffs would also make a capital contribution that consisted of "cash or other capital assets" to the LLC, although it does not specify what is meant by "capital assets." Complaint at ¶ 240(d). "If cash was contributed, it would then be used to purchase capital or ordinary assets (depending on whether a capital or ordinary loss was being 'created')." Id.

Plaintiffs contend that all of the class members entered into similarly structured MLDs and that they did so during the Class Period. The only structural difference appears to be that not all of the individual Plaintiffs used S Corporations in the transaction. In most cases, and as expected, the options expired "out of the money" meaning there would be no advantage to exercising the option because it would cause a loss not a gain. In the Complaint, Plaintiffs allege that they were defrauded through the marketing and sale of this tax advice, which the Defendants knew or should have known the IRS would find to have lacked the economic substance necessary for the transaction to work. Plaintiffs also allege that the Defendants charged excessive and unconscionable fees for the transactions and advice, improperly agreed to split fees between lawyers and non-lawyers, and failed to disclose that the opinion letters about the feasibility of the strategy received from various law firms were not "independent" but were actually part of the group promoting the transactions.

Plaintiffs suit alleges that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and are liable for treble damages and other relief arising from breach of contract and the duty of good faith and fair dealing, fraud, negligent misrepresentation, breach of fiduciary duty, "unethical, excessive, and illegal fees," and unjust enrichment. Complaint at §XVII. Defendants have filed seven separate motions to dismiss. For purposes of this opinion, the Court has considered these motions collectively. Because Plaintiffs' RICO claims cannot be maintained if they could be pled as securities fraud claims pursuant to the Private Securities Litigation Act ("PSLRA") for the reasons discussed below, the Court only addresses the RICO allegations.

## II. DISCUSSION

### A. Standard of Review

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must construe all factual allegations in the complaint in favor of the non-moving party. Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991). The Court's consideration is limited to facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken. Id. Dismissal of a claim is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). There is a heightened standard of pleading in claims of fraud or mistake. Fed. R. Civ. P. 9(b) requires "circumstances constituting fraud or mistake shall be stated with particularity."

### B. Plaintiffs' RICO Claims

Defendants first move to dismiss the Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act, ("RICO") 18 U.S.C. §§ 1962(c) and (d) on the grounds that the Complaint fails to sufficiently allege such claims and that the claims are barred by Section 107 of the Private Securities Litigation Reform Act, ("PSLRA"), which amended 18 U.S.C. § 1964 and includes RICO claims where the PSLRA is applicable.

Plaintiffs have also pled a third RICO claim under Title 18 U.S.C. § 2. However, the law is clear that a private cause of action for aiding and abetting a RICO violation so the substance of this claim must be dismissed. See Dep't of Econ. Dev. v. Arthur Anderson & Co., 924 F. Supp. 449, 475-77 (S.D.N.Y. 1996)(applying the reasoning used in Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994), to find that there is no civil aiding and abetting liability under RICO).

Title 18 § 1964(c) (as amended by Section 107 of the PSLRA, Pub. L. No. 104-67, 109 Stat. 737 (1995)) provides civil remedies for RICO violations in that

> any person injured in his business or property by reason
> of a violation of section 1962 of this chapter may sue
> therefore in any appropriate United States District Court

4

>and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation section 1962. 18 U.S.C. 1964(c).

Section 107 of the PSLRA eliminates any actionable fraud in the purchase or sale of securities as a predicate act for a private cause of action under RICO, while Section 10(b) of the Securities Exchange Act makes it "unlawful for any person … to use or employ, *in connection with* the purchase or sale of any security … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. §78j (emphasis added).

To determine whether an alleged predicate act in a civil RICO claim is in connection with the purchase or sale of securities and is therefore barred by the PSLRA, the Court must focus its analysis on whether the conduct pled as the predicate offenses is "actionable" as securities fraud. Bald Eagle Area Dist. v. Keystone Financial, Inc., 189 F.3d 321, 330 (3d Cir. 1999). The purpose of this amendment was not merely "to eliminate securities fraud as a predicate offense in a civil RICO action," but also to prevent plaintiffs from "pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." H.R. Conf. Rep. No. 104-369, at 47. The alleged predicate acts here, as is often the case, are mail and wire fraud. Complaint at ¶ 393.

To define this conduct as securities or non-securities fraud is difficult, and especially so in a transaction like this where there are obviously non-securities components. The Supreme Court defined the scope of "in connection with" as very broad. S.E.C. v. Zandford, 535 U.S. 813, 153 L. Ed. 2d 1, 122 S. Ct. 1899 (2002). To satisfy this requirement a determination must be made as to whether this is a "fraudulent scheme in which the securities transactions and breaches of fiduciary duty coincide." Id. at 825. Conduct that is incidental or tangentially related to the sale of securities will not meet this standard. In Zanford, the Court provided two examples of conduct that "would not include

5

the requisite connection to a purchase or sale of securities." Id. The first is where "a broker embezzles cash from client's account." Id. The second is where "a broker takes advantage of the fiduciary relationship to induce his client into a fraudulent real estate transaction." Id. The Second Circuit recently articulated the limitation on the "in connection with" requirement of Section 10(b). Dabit v. Merrill Lynch, et al., 395 F.3d 25 (2d Cir. Jan. 11, 2005). There the Court held that the requirement is satisfied when the securities transactions and breaches complained of coincide and are not independent events.[2] Id. at 49.

Several cases involving tax strategies similar to this one are instructive. See, e.g., Seippel v. Jenkins & Gilcrest, P.C. et al, 341 F.Supp.2d 363 (S.D.N.Y. 2004)(held that because defendants' acts were alleged to be part of a single fraudulent scheme and the sale of stock was an integral part of that scheme, the "in connection with" requirement was met and the suit was barred by the PSLRA); Stechler v. Sidley, Austin Brown & Wood et al, 2005 U.S. Dist. LEXIS 5720 (S.D.N.Y. Apr. 5, 2005)(same); Jacoboni v. KPMG LLP, 314 F.Supp.2d. 1172 (M.D. Fla. 2004)(the district court analyzed the tax transaction as a whole and held that it was improper for the magistrate judge to determine that some but not all predicate acts underlying plaintiffs' RICO claim are barred by Section 107 of the PSLRA. The PSLRA bars the entire claim). Essentially, the Court must assess the tax strategy as a whole and not parse out various steps. If one predicate act alleges breaches of duty coincident with securities transactions then the whole scheme is subject to the PSLRA bar. Because here the Plaintiffs contend the wrongful acts were committed as part of a single fraudulent scheme, all of the components must be considered together for securities fraud purposes. Also, because the tax strategy at issue is part of a single scheme, if any predicate act is barred by the PSLRA it is fatal to the entire RICO claim.

---

[2] The Dabit Court dismissed the claims pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), but the "in connection with" analysis is the same under the PSLRA. SLUSA is a companion law to the PSLRA that makes federal court the exclusive venue for class actions alleging fraud in the sale of certain covered securities. Dabit, 395 F.3d at 33.

*1. Foreign Exchange Digital Options Contracts*

As part of the MLD strategy, Plaintiffs purchased "certain foreign exchange digital option contracts," or FX contracts. Complaint at ¶ 1. Foreign currency options are securities if they are entered into on a national securities exchange. See 15 U.S. C. §§ 77b(a)(1), 78c(a)(10). Tax schemes that involve foreign currency options that are traded on a national exchange trigger the PSLRA bar. See, e.g., Seippel, 341 F. Supp. 2d at 372.

Defendants do not contend that the FX contracts themselves constitute securities, but rather that because the Plaintiffs claim to have been tricked into thinking that they were traded on a national exchange, the nature of the claim is necessarily securities fraud and thus subject to the PSLRA bar. This argument is unavailing. Defendants do not point to any paragraph in the Complaint that expressly states that the Plaintiffs believed themselves duped by representations of the Defendants about where the foreign currency was exchanged. While there can be instances where antifraud provisions may be relied upon even where no security exists, that is not the situation here. See, e.g., S.E.C. v. Gallard, 1997 WL 767570 (S.D.N.Y. Dec. 10, 1997)(Baer, J.)(defendants' attempt to sell nonexistent securities constituted securities fraud). Here, the FX contracts exist and are not securities for purposes of the PSLRA bar.

*2. LLPs and S Corporations*

According to the Complaint, certain LLCs were created as part of the MLD strategy to generate the desired tax losses. Complaint at ¶ 240(a). Some, but not all, of the individual Plaintiffs' shares were subsequently contributed to S Corporations. Id. ¶ 240(e). Thereafter the S Corporations allegedly purchased the Clarion Defendants' (see n.1) shares in the LLCs, which terminated the LLCs for federal income tax purposes. The S Corporations then calculated their adjusted tax basis in the LLCs' remaining assets. Id. ¶ 240(g). The subsequent sale of these assets created Plaintiffs' tax loss. Accordingly, the LLC and in some instances the S Corporation were integral steps in the MLD tax strategy.

Defendants argue that an interest in an LLC can constitute a security. S.E.C. v. Parkersburg Wireless L.L.C., 991 F. Supp. 6, 7-8 (D.D.C. 1997). Here however, and

probably understandably, there is no way to discern from the pleadings whether the LLCs constitute securities or not. Defendants also argue that some of the Plaintiffs created their S Corporations as part of the MLD strategy and that those shares are securities pursuant to Landreth Timber Co., v. Landreth, 471 U.S. 681, 693-94 (1985)(stock in a closely held corporation is a security); see also Sulkow v. Crosstown Apparel, Inc., 807 F.2d 33, 36-37 (2d Cir. 1986). As part of the strategy, shares were issued to the individual Plaintiffs which constitutes a "sale" under the federal securities laws. Ruckle v. Roto American Corp., 339 F.2d 24, 27 (2d Cir. 1964). Landreth held that a single individual who purchased all the stock in a privately held corporation could state a claim for fraud under the securities laws. This holding was premised on the finding that the S Corporation at issue had all of the same characteristics traditionally associated with common stock. Such characteristics include: (1) the right to receive dividends contingent upon an apportionment of profit; (2) negotiability; (3) the ability to be pledged or hypothecated; (4) voting rights in proportion to the number of shares owned; and (5) the capacity to appreciate in value. Landreth, 471 U.S. at 866, citing United Housing Foundation, Inc. v. Forman, 421 U.S. 837 (1975); see also Heller v. Deutsche Bank AG, 2005 U.S. Dist. LEXIS 3445, at *18 (E.D. Pa. Mar. 3, 2005)(denying motion to dismiss RICO claims on the basis of PSLRA bar, where there was an issue of fact as to whether certain instruments involved in the tax strategy were 'securities'). Here, because at this stage it is impossible to tell if the Plaintiffs' equity stake in the LLCs or S Corporations constitutes a security, it cannot be resolved on a motion to dismiss.

   3. *Capital Contributions to the LLCs*

Having determined that the makeup of the equity in the LLCs and S Corporation cannot be determined on the pleadings, the inquiry does not automatically end. All that is certain from the complaint is that the Plaintiffs utilized LLCs and some Plaintiffs also utilized S Corporations and both were fed with "cash or capital assets" in addition to the Digital Options or FX contracts. Complaint at ¶ 240(d). Plaintiffs concede that some of the individual Plaintiffs did use stock to fund the LLCs and/or S Corporations but the complaint is intentionally vague about this presumably to avoid dismissal pursuant to the PSLRA bar.

Oral Argument Tr. at 13:21-14:04. The Plaintiffs would have the Court believe that because of these factual issues about who used marketable securities and who did not, no determination about the PSLRA bar can be made at this stage. Creative but no cigar. "Allowing such surgical presentation of the cause of action would undermine the congressional intent behind the RICO amendment." Bald Eagle, 189 F.3d at 330.

In any event, the case law is clear that if marketable securities were used by any of the Plaintiffs in exchange for their equity stake in the LLCs or S Corporations, as part of this single tax transaction the PSLRA bar is necessarily activated and the civil RICO claims must be dismissed. See, e.g., Stechler, 2005 U.S. Dist. LEXIS 5720 at *51 (because common stock in marketable securities was used as part of the transaction the action was barred by the PSLRA); see also Dabit, 395 F.3d at 49 (the Court distinguished between plaintiffs who purchased research reports through commissions to brokers for stock trades satisfied the "in connection with" requirement, whereas plaintiffs who purchased research reports through flat annual fees did not). Likewise here, as the Defendants argue, if any Plaintiffs contributed marketable securities to buy an interest in an LLC for purposes of this tax transaction then the "in connection with" hurdle is overcome and the RICO suit is barred. At oral argument, Plaintiffs' counsel argued that some individual Plaintiffs did not sell stock, but rather used Canadian currency in addition to the FX contracts to buy the LLC interests. Oral Argument Tr. at 20:05. For these Plaintiffs, the inquiry should continue to determine whether the stock they purchased in the LLCs constitute securities.

Plaintiffs also contend that the nature of these contributions is irrelevant and that the basis that generated the "tax loss" could just as easily been a tangible asset like furniture, office equipment, or livestock. Plaintiffs' Consolidated Response at *4. But the fact that the basis was created by contributions of marketable securities in at least some circumstances is of significance. So any argument about what could have been included in lieu of securities is unavailing.

Plaintiffs also try to distinguish this tax strategy from the one used in Seippel where the district court dismissed the RICO claims as barred, but I see little difference. In both instances the plaintiffs allege that the defendants were engaged in a fraudulent scheme

9

before, during and after the stock transaction. In both, the stock transaction was integrally related to the tax scheme, without it there would be no increased basis. The only difference is that in the present case, the pleadings are silent as to whether the defendants contacted the Plaintiffs because of an expected sale of securities. We do know that the "capital asset" contribution happened after the FX contracts were bought so it would appear that securities play a role somewhere in the middle of the scheme. For at least some of these individual Plaintiffs, the sale of securities was necessary to effectuate the tax strategy, and as to those the RICO claims are actionable as securities fraud and are barred by the PSLRA.

All of Plaintiffs' claims are dismissed without prejudice, except for Plaintiffs' RICO claim for "aiding and abetting" pursuant to 18 U.S.C. § 1962(c), which is dismissed with prejudice. Plaintiffs are granted leave to file a Third Amended Complaint within 30 days from the date of this Order. At this time, there is no reason to reach the sufficiency of the RICO pleadings or any of the supplemental common law claims.

If Plaintiffs choose to file another Complaint to conform with this Opinion, they may; (1) plead securities fraud without any RICO claims, (2) plead a RICO claim without those individual Plaintiffs who used marketable securities in connection with the LLCs or S Corporations, or (3) plead a RICO claim with particularity citing every instance where a marketable security was used in connection with this tax strategy (while the consequences here are unlikely to be appealing they are worth inclusion).

### III.   **CONCLUSION**

Because of the disposition of Plaintiffs' RICO claims, it would be imprudent to rule on whether the Plaintiffs properly alleged each element of a RICO claim. With regard to the other grounds for dismissal set forth by the Defendants, since they are predicated on whether Plaintiffs make out a federal cause of action, the Court declines to reach these issues at this time.

For the foregoing reasons, Plaintiffs' Second Amended Complaint is dismissed and Plaintiffs are granted leave, probably the last, to file a Third Amended Complaint. If the Defendants choose to move to dismiss the Third Amended Complaint, they should combine

their collective arguments and submit only one motion to dismiss. The Third Amended Complaint will be served and filed, and any motion to dismiss and any answer thereto and any reply, will be fully briefed and filed and a courtesy copy delivered to chambers on or before July 25, 2005. The parties will work out their own schedule.

**SO ORDERED.**

New York, New York
May 26, 2005

_____
U.S.D.J.