UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
MICHAEL LING, ET AL., on his own behalf and on : 
behalf of a class of similarly situated persons :
:
Plaintiffs, :
:
-against- : 04 Civ. 4566 (HB)
:
CANTLEY & SEDACCA, L.L.P., ET AL. : **OPINION & ORDER**
:
Defendants. :
-------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

  In this class action, plaintiffs allege that the defendants violated the Racketeer Influence and Corrupt Organizations Act ("RICO") and are liable for damages that result from civil conspiracy, breach of fiduciary duty, fraud, breach of contract, breach of duty of good faith and fair dealing, negligent misrepresentation, professional malpractice, the declaratory judgment, unjust enrichment, and unethical, excessive and illegal fees. The Court certified the class for settlement purposes and preliminarily approved the settlement in an Order issued August 22, 2005.

  In the Final Judgment and Order dismissing the claims against defendants, the Court approved the class settlement but reserved judgment on the award of attorneys' fees and expenses. For the reasons stated below, I conclude that the attorneys' fees request is excessive and award Class Counsel $781,830.00 in fees and $77,782.50 in expenses.

## I. BACKGROUND

  Commencing in 2000, the defendants advised taxpayers on a tax shelter strategy that the IRS has now challenged. Approximately 180 Class Members contend that substantially the same tax strategy advice was given to them by the defendants. Plaintiffs allege that the defendants marketed the tax strategies as legitimate, but with knowledge that the scheme would be deemed invalid by the IRS.

  The final settlement created a Settlement Fund of $4.599 million to resolve the damage claims of the class against the defendants. Class Counsel seek $997,582.50, 21.69% of the fund, in attorneys' fees and expenses.

## II. APPLICABLE STANDARD

Attorneys' fees must be reasonable under the circumstances. Goldberger v. Integrated Res. Inc., 209 F.3d 43, 47 (2d Cir. 2000). To determine reasonableness, courts consider: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Id. at 50. It is in the district court's discretion to determine the reasonableness of the award. Id. at 47.

## III. DISCUSSION

Class Counsel argue that an award of 21.69% of the Settlement Fund is fair, adequate and reasonable. For the reasons set forth below, I disagree.

### A. *Goldberger* Factors

#### 1. Time, Labor and Complexity

Neither the first nor second Goldberger factor, time and labor expended by counsel or complexity, justify an award to Class Counsel over the lodestar amount.

Class Counsel state they spent 1,941.15 hours on this matter. Canada Decl. at ¶ 7, 10; Cory Decl. at ¶ 3; Lathram Decl. at ¶ 3. According to Counsel's declarations, this time was spent 1) interviewing Class Members and their current tax advisors, 2) reviewing and analyzing Class Member documents, 3) conducting legal research, 4) consulting with experts, 5) identifying and analyzing potential defendants' liability and damages for Class Members' claims, 6) drafting motions and briefings, 7) participating in oral arguments, 8) engaging in extensive settlement negotiations, 9) engaging in extensive conferences with Class Members and co-counsel, 10) preparing informal document requests for defendants, 11) analyzing over 2,156 pages of documents produced in discovery, 12) attending hearings in connection with the settlement, 13) conducting extensive interviews of defendants, and 14) analyzing defendant Cantley & Sedacca's insurance policy and potential coverage issues. Canada Decl. at ¶ 6.

Although an extensive and doubtless accurate list of activities, they fail, if indeed the effort was made, to illustrate the use of any particularly novel or complex skill. Class Counsel argue that this matter was complex because it involved a tax shelter scheme that was only completely understood by experts in the field. Pl. Fees Mem. at 41. However, the mere fact that experts were necessary may justify the need to spend additional time on this matter (accounted for in the lodestar calculation), but does not justify an increase in the attorneys' fee award. Cf.

Thompson v. Metro. Life Ins., 216 F.R.D. 55 (S.D.N.Y. 2003) (describing a claim that involved policy holders from more than a half century ago and alleged conduct that ended a long time ago).

The size of the matter, which on occasion may support Counsel's request for an increase in the award beyond the lodestar figure, is not present here, nor is the class a particularly large one. See, e.g., In re Elan Sec. Litig., 385 F.Supp. 2d 363, 371 (S.D.N.Y. 2005) (awarding fees in a 400,000 member class); See, e.g., Thompson, 216 F.R.D. at 71 (awarding $24.245 million in fees).

This Court also questions the hourly rates used by the attorneys in calculating their lodestar figure. The Supreme Court has stated that lodestar figures must be calculated with regard to "the prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984). In calculating lodestar rates, courts may consider attorneys' fee awards in comparable cases as well as the court's own knowledge of current market rates for attorneys of comparable experience, skill, and reputation. See Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997). It is established that the "relevant community" for this purpose is "the district in which the court sits." Polk v. New York State Dept. Corr. Servs., 772 F.2d 23, 25 (2d Cir. 1983).

Class Counsel has provided no support for the market rates used in their lodestar calculation. See Blum, 465 U.S. at 895 (stating that the burden is on the applicant to demonstrate that its' rates are "in line with that of other attorneys with commensurate skill, experience, etc."). Instead, Counsel declare that the rates are consistent with rates commonly charged by attorneys in cases of this type and as support state that they have been awarded these fees in other unrelated actions. Pl. Fees Mem. at 36; Compare with Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989) (stating that plaintiff must "establish [] hourly rate with 'satisfactory evidence.'" (quoting Blum, 465 U.S. at 896 n.11)).

**2. Risk of Litigation**

The third Goldberger factor, which has been called the most important, requires that the court consider the contingency risk associated with the matter. See, e.g., In re Bristol-Meyers Squibb Sec. Litig., 361 F.Supp.2d 229, 233 (S.D.N.Y. 2005). Contingency risk is measured at the inception of the lawsuit. Goldberger, 209 F.3d at 55. Counsel argue that they faced the following risks in bringing this lawsuit: 1) whether insurance would be available to satisfy a

3

judgment, 2) whether the defendants could withstand the stress of litigation or pay settlements or judgments, 3) whether judgments could be collected from the defendants or their insurance companies, and 4) and the expense, delay, and other usual risks associated with complex litigation. Pl. Fees Mem. at 3-4.

Class Counsel's arguments focus on the potential benefit to the class, not litigation risk. The stated risks here zero in on amount of damages, not on defendant liability. Cf. In re Dreyfus Aggressive Growth Mut. Fund Litig., 2001 WL 709262 *5 (S.D.N.Y. June 22, 2001) ("The principal risk in this case then is not that plaintiffs won't recover, rather that the awarded damages might be less than hoped for.").

The Court notes that pursuant to Goldberger, contingency risk does not "compel enhanced fees." Goldberger, 209 F.3d at 53. Class Counsel have provided arguments that are applicable to most any class action (the risk of judgment-proof defendants) but has not sufficiently demonstrated that the particular risks in this case entitle them to an upward adjustment of their fee award or for that matter that there were any such risks.

### 3. Quality of Representation

Courts should not necessarily award an increased fee if counsel simply displays the general level of skill expected. See Fears v. Wilhelmina Model Agency, Inc., 2005 WL 1041134 *8 (S.D.N.Y. May 5, 2005) (stating that this factor "is designed to reward 'particularly resourceful' legal work that 'secures substantial benefit . . . with a minimum of time invested,' or to decrease 'the objectively determined fee where the benefit produced does not warrant awarding the full value of time expended.'" (citing In re Agent Orange Prod. Liab. Litig., 611 F.Supp 1296, 1313 (E.D.N.Y. 1985)).

The Court finds that Class Counsel adequately represented the plaintiffs in this case. The case was filed in June 2004 and a settlement was entered in August 2005. Since counsel successfully negotiated a $4.599 million settlement on behalf of the Class in a relatively short period of time, their actions merit consideration with respect to the fee award.

### 4. Requested Fee in Relation to Settlement

As a result of the settlement, the total fund is $4.599 million. Class Counsel seek 20% of the settlement amount, $919,800.00, plus expenses of $77,782.50, totaling $997,582.50. Plaintiffs' requested fee award constitutes 21.69% of the fund.

Class Counsel argue that their fee request is reasonable because it is in line with other

4

awards in the Second Circuit. However, the court in Goldberger cautioned against awarding attorneys' fees based on a benchmark figure. Goldberger, 209 F.2d at 51-52. Instead, fees should be awarded based on the characteristics of a particular case.

The facts of this case do not merit attorneys' fees of 20%, nearly $1 million of the $4.599 million settlement. The case was not particularly lengthy or contentious and Class Counsel likely benefited from their work in a related class action lawsuit, Denney v. Jenkins & Gilchrist, settled in February 2005.[1] In that case, counsel received an attorneys' fees award of $11,985,965.00, 15% of the Settlement Fund.

**5. Public Policy Considerations**

Lastly, public policy does not favor a reward of this size here. Given the contingent nature of class action lawsuits, this Court recognizes that an increased fee over the lodestar amount provides incentive for qualified counsel to bring these cases. But this reason does not provide sufficient support for plaintiffs' fee request. Courts also must guard against providing a monetary windfall to Class Counsel to the detriment of the plaintiff class.

**B. Lodestar Cross-Check**

Courts that adopt the percentage method typically use the lodestar calculation to cross-check the award and "confirm that the percentage amount does not award counsel an exorbitant hourly rate." In re Bristol-Myers Squibb, 361 F.Supp.2d at 233. Class Counsel calculate a lodestar amount of $667,895.00.

After reviewing recent fee awards for cases litigated by small firms, the Court finds that the partner and junior associate fees billed in this case were well above the norm. Partners here billed either $525 or $550 per hour, more than the reasonable hourly range for counsel from small firms with commensurate experience. See, e.g., New York State Nat. Org. for Women, 2003 WL 2006608 *3 (S.D.N.Y. Apr. 30, 2003) (stating that partner fees of $430.00 and $400 were on the high end of the reasonable range). As such, the Court reduces the hourly billing rate for partners to $450 per hour.

In addition, the $200 per hour fee for Alyssa Barreneche, a first year associate with no demonstrated experience in this area, was also beyond the range of hourly rates given junior associates in the district. See, e.g., Id. (awarding $150.00 per hour to first year associate);

---

[1] The declarations of Class Counsel support this inference. See Canada Decl. at ¶ 6 (stating that Class Counsel worked on "substantial motions, briefings, and oral arguments in connection with *Ling* and *Denney*.").

Casper v. Lew Lierberbaum & Co., Inc., 182 F.Supp.2d 342, 348 (S.D.N.Y. 2002) (awarding $120.00 per hour to associate with two to three years of experience). Thus, the Court reduces Barreneche's rate to $150 per hour to correspond with hourly rates for junior associates in this area.

However, the Court finds that although the fees for senior associates were on the upper end of the market, ranging from $300 to $400 per hour,[2] they were within the reasonable range based on the experience of these attorneys. See, e.g., Davis v. New York City Hous. Auth., 2002 WL 31748586, at *2-3 (S.D.N.Y. Dec. 6, 2002) (awarding attorney with 15 years experience $375.00 per hour).

Accounting for the adjustments in hourly rates made above, the new lodestar amount is $626,891.25.

## IV. CONCLUSION

Based on an analysis of the Goldberger factors, cross-checked with the lodestar amount, this Court concludes that a percentage award of 17%, $781,830.00, plus $77,782.50 for costs and expenses, totaling $859,612.50, is reasonable in this case. The Clerk of the Court is instructed to close this matter and remove it from my docket.

**IT IS SO ORDERED.**

**New York, New York
February _____, 2006**

U.S.D.J.

---

[2] The senior associate that billed $400 per hour had over 13 years of experience in this area.

6